UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BOBROW PALUMBO SALES, INC.

               Plaintiff,        **MEMORANDUM OF DECISION
                                               AND ORDER**

  -against-

BROAN-NUTONE, LLC,                   04CV5334 (DRH)(ETB)

               Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**Appearances:**

**Seavey Vogel & Oziel, LLP**
Attorneys for Plaintiff
33 Willis Avenue, Suite 200
Mineola, New York 11501
By: David Nevins, Esq.

**McCarter & English, LLP**
Attorneys for Defendant
245 Park Avenue, 27th Floor
New York, New York 10167
By: Joseph R. Di Salvo, Esq.

**Reinhart, Boerner, Van Deuren S.C.**
Attorney for Defendant
1000 North Water Street
P.O. Box 2965
Milwaukee, Wisconsin 53201-2965
By: Stephen T. Jacobs, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff, Bobrow Palumbo Sales, Inc. ("Plaintiff" or "Bobrow") commenced this action

alleging claims for unjust enrichment, fraud and misrepresentation, and breach of contract.

Presently before the Court is the motion of Defendant Broan-Nutone LLC ("Defendant" or

"Broan") for summary judgment dismissing all of Plaintiff's claims and granting Broan summary

judgment on its counterclaim for attorney's fees. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## Background

The following facts are taken from the parties' submission and are undisputed, unless noted otherwise.

On or about February 1, 1999, Bobrow and Broan entered into a Retail Manufacturer's Representative Agreement (the "Agreement") by which Broan retained Bobrow to provide certain services relating to the solicitation of orders and sales of Broan products in Home Depot stores in the northeast. (Def. Rule 56.1 Statement at ¶ 2.) Under the Agreement, Bobrow was obligated, among other things, to provide in-store services including the execution of display sets and resets in accordance with schedules and standards established by Broan. (*Id.* at ¶ 5.)

"Set" and "reset" refer to the placement, display, and stock of Broan's inventory – consisting of range hoods and fans – at the point of sale in Home Depot stores. A product is set when it is first introduced into the market at the point of sale. A reset refers to when there is a change, either in the product line, an introduction of a new product or an alteration in the manner in which a product is presented to the consumer on the sales floor. (*Id.* at ¶¶ 6-7.) Setting and resetting a product can involve, for example, moving beams, moving electrical, and building shelving. (Di Salvo Aff. at Ex. C (Palumbo Dep. at p. 25).)

Under the Agreement, Plaintiff assumed all costs incurred in connection with in-store service and solicitation. Broan compensated Plaintiff for the services provided under the Agreement by paying a commission calculated on the amount of net sales of Broan products sold in the Home Depot stores in Plaintiff's territory. (Def. Rule 56.1 Statement at ¶¶ 8 & 12.)

The Agreement provides that it shall "continue for the Term, unless terminated by either party under 30 days written notice with or without good cause." (*Id.* at ¶ 9.) It also contains a provision that it "constitute[s] the entire Agreement between Broan and [Bobrow] and may not be substituted, varied or abridged in any manner, except as provided herein, unless by written amendment executed by [Bobrow] and a duly authorized agent of Broan." (*Id.* at ¶ 10.)

Prior to November 1, 2004, Home Depot required that Broan provide in-store service functions, including setting and resetting display products, as a condition of selling products in its stores. Broan hired Bobrow (and other sales representatives for other territories) in order to comply with that requirement. (*Id.* at ¶ 13.)

In or about mid-2003, Home Depot announced that it would be implementing its In-Store Service Initiative ("ISSI"), also referred to as the "Roadrunner" program. Although announced in 2003, Bobrow was aware, at least as early as 2001, that Home Depot intended to implement changes to its in-store service requirements. (*Id.* at ¶ ¶ 23 & 26.)

Under the ISSI program, Home Depot would be directly responsible for hiring sales representatives to perform in-store product sets and resets. Under ISSI, the representatives responsible for performing these services were hired directly by, reported to and were paid by Home Depot. Home Depot, in turn, funded this program by extracting a price credit from its vendors. Home Depot implemented the ISSI program department by department beginning with Department 27 (Electrical) in June 2003. Broan's products, range hoods and fans, were not part of Department 27 but rather Department 26. (*Id.* at ¶¶ 24, 25, & 27.)

Also in 2003, Home Depot ordered that range hood displays be reset again in 2004. (*Id.* at ¶ 21.) The reset took place from approximately April through July 2004. (*Id.* at ¶ 30.) After

the resets were complete, in or about August 2004, Home Depot announced that the ISSI program was being implemented in Department 26 effective November 1, 2004. (*Id.*) Home Depot also announced its decision as to who would be selected as a "go-forward" representative under ISSI for Department 26 and others. Plaintiff was not awarded Department 26 although it was awarded a different department. (*Id.* at ¶ 37.) By letter dated August 30, 2004 Broan notified Bobrow that it was terminating the Agreement effective October 2, 2004. (*Id.* at ¶ 38.)

The dispute in this case centers around what happened between the time the 2004 range hood reset was announced and the termination of the Agreement, i.e., between approximately October 2003 and August 2004. According to the Plaintiff, once it knew of the ISSI program and the range hood reset scheduled for 2004, it informed Defendant that it would not perform the reset unless it was paid additional compensation. Plaintiff contends that it and Defendant entered into a separate contract, apart from the Agreement, whereby it would be paid its costs for the 2004 reset and that in reliance on Defendant's promise to pay the reset costs, Plaintiff did not terminate the Agreement prior to commencing work on the reset. Plaintiff seeks $258,000 in costs and expenses it alleges is associated with the 2004 range hood reset. Additionally, Plaintiff claims it is entitled to commissions through the end of 2004. Defendant contends that it never agreed to pay anything in addition to what it was required to pay under the Agreement and that Plaintiff was obligated to perform the reset under that Agreement for the compensation set forth therein, i.e., a commission based on sales.

### *Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other

4

documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in its pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

*Discussion*

*I. Unjust Enrichment*

The first cause of action asserted by the Plaintiff is one for unjust enrichment. Defendant urges dismissal of this cause of action because "Wisconsin law recognizes that no unjust enrichment claim can be pursued by a plaintiff where there exists a valid contract between the plaintiff and defendant governing the subject matter of the dispute." (Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Mem.") at 4). The Court agrees.[1]

"The doctrine of unjust enrichment does not apply where the parties have entered into a contract." *Cont'l Cas. Co. v. Wisconsin Patients Comp. Fund,* 473 N.W.2d 584, 587 (1991); *accord Beer Capitol Distrib., Inc. v. Guinness Bass Import Co.,* 290 F.3d 877, 881 (7th Cir. 2002). "Unjust enrichment is a quasi-contractual remedy available only when the parties have not otherwise made a contractual arrangement to compensate one party for a benefit it conferred on the other." *Northern Crossarm Co., Inc. v. Chem. Spec., Inc.,* 318 F. Supp. 2d 752, 755 (W.D. Wis. 2004). If the agreement between the parties encompasses the aspect relevant to the

---

[1] Jurisdiction of this case is grounded in diversity and therefore this Court would normally apply the law of the forum state, i.e., New York. *See Finance One Pub. Co. Ltd. v. Lehman Bros. Spec. Financing Inc.,* 414 F.3d 325, 331 (2d Cir. 2005), *cert. denied,* 126 S. Ct. 298 (2006). The parties agree that Wisconsin law applies to this case and cite to Wisconsin law in their Memoranda of Law. Accordingly, the Court will apply Wisconsin law as well. In any event, it appears that the relevant law is the same in New York and Wisconsin. *Cf. Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 389 (1987) (where it is undisputed that the relationship between the parties was defined by a written contract and that contract specifically provided a method for computing price adjustments, plaintiff was not entitled to quasi contract relief for damages sustained as a result of substantial design changes) *with Beer Capitol Distrib. Inc. v. Guiness Bass Import Co.,* 290 F.3d 877, 881 (7th Cir. 2002) (applying Wisconsin law and holding that claim for unjust enrichment was unavailing as there was an agreement between the parties and unjust enrichment is an obligation enforced in the absence of any agreement).

unjust enrichment claim, the plaintiff cannot recover under unjust enrichment. *Id.*

The Agreement in this case governs all the aspects of the parties relationship relevant to Bobrow's unjust enrichment claim. It obligates Bobrow to perform sets and resets and to bear the cost thereof. It provides for Bobrow to receive compensation for its services in the form of commissions. Under these circumstances, Bobrow cannot maintain a cause of action for unjust enrichment.

Plaintiff's argument that "Wisconsin law does not bar a party from seeking equitable relief for a benefit conferred, if that benefit falls outside the scope of the parties' contractual relationship" and that here there was a separate agreement to pay it additional compensation for the 2004 reset (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem.") at p. 7) does not save its unjust enrichment claim. Here, the benefit conferred, the 2004 reset, was within the parties' contractual relationship - whether that relationship was governed by the original Agreement or the Agreement as allegedly modified in 2004 (see discussion *infra*). Because there exists a contract covering the benefit conferred, there can be no claim for unjust enrichment. Accordingly, summary judgment is granted in favor of Defendant on the first cause of action for unjust enrichment.

## II. Breach of Contract

Plaintiff's breach of contract claim appears to be two-fold. First, Plaintiff contends that Defendant breached an agreement to reimburse Plaintiff for the costs of the 2004 reset. Second, Plaintiff claims that Defendant breached an agreement to pay Plaintiff commissions through December 2004. (Pl. Mem. at p. 11.) Defendant argues that it is entitled to judgment on these claims because of Wisconsin's pre-existing duty rule and because the terms of the Agreement

were never modified in writing.  Additionally, Defendant points to Plaintiff's deposition testimony wherein it was conceded that only the amount for the reset was owed. (Def. Mem. at 17 - 18.)

"The pre-existing duty rule states that promising to perform a duty that already is owed under an existing contract is not consideration, and, thus, a modification to the contract is unenforceable." *Contemp Design Inc. v. Chicago Dist. Council of Carp'ts*, 226 F.3d 535, 550 (7th Cir. 2000), *cert. denied, 531 U.S. 1078 (2001)*.  There are two exception to the rule.  "The first is for the promisee to undertake to do something in addition to what he already is obligated to do under his preexisting duty. . . . If additional consideration is given then the modification is valid." *Id.*  (internal citations omitted).  Second, the parties may agree to rescind the original contract, which allows them to create a different contract on entirely new terms.  *Id.*

In the present case there is sufficient evidence to create a question of fact as to whether new consideration was given thereby making the modification valid. Under the Agreement, Plaintiff was free to terminate the Agreement on 30 days written notice.  According to the evidence presented by Plaintiff, it agreed not to exercise that right in exchange for Defendant's promise to pay it the cost of the 2004 reset.  The agreement not to exercise its contractual right to terminate constitutes sufficient consideration for the modification.  After all, if Plaintiff had exercised its lawful right to terminate the Agreement, Broan would have been obligated to either hire (and pay) someone else to perform the reset or incur the costs of performing the reset itself.

Nor does the absence of a written modification require summary judgment in favor of Defendant.  "The general rule in most jurisdictions is that parties to a written contract may alter or modify its terms by a subsequent oral agreement even though the contract precludes oral

8

modifications." *Park v. Dealers Transit Inc.,* 596 F.2d 203, 204 (7th Cir. 1979) . Wisconsin follows this general rule and recognizes that by words or conduct the parties may waive a contractual provision requiring changes to be in writing. *See Royster-Clark, Inc. v. Olsen's Mill, Inc.,* 290 Wis. 2d 264, 275 (2006). "Waiver is to be determined as a question of fact . . . ." *Id.* (internal quotation marks and citations omitted.). Plaintiff has presented sufficient evidence to raise a question of fact as to whether the contract was modified. Accordingly, summary judgment is denied on the breach of contract claim to the extent it seeks reimbursement for the costs of the 2004 reset.[2]

The claim for commissions through December 2004 must, however, fail. The letter on which Plaintiff's claim is based states:

> We will provide you the difference between our current rate and the new rate Home Depot will charge us under the new program from the date that the new program starts until 12/31/2004 provided you satisfactorily completed the current hood reset. In other words, if Home Depot charges us less commission under the new program than we are currently paying you, we will pay you the difference, even if you are not a "go-forward" rep. As is the case today, we will pay the difference directly to you every month through the end of this year. If Home Depot charges us the same or more than the rate we are currently paying you, there will be no override to give to you.

Nevins' Aff. at Ex. T. There is no dispute that the commission being paid to Plaintiff under the Agreement was 3% of net sales. *Id.* at Ex. B. Plaintiff has not submitted any evidence creating a

---

[2] Defendant points to a March 24, 2004 memorandum from Bobrow to Home Depot referring to the upcoming resets and the facts that "as of now all three companies have no intention on paying us" as conclusive evidence that there was never any agreement to pay Plaintiff for the cost of the 2004 reset. (Di Salvo Aff. at Ex. C-7.) The Court notes, however, that according to the memorandum work had not commenced on the resets and Plaintiff's deposition testimony and contemporaneous notes could support a finding that the agreement to pay was reached thereafter. (*See, e.g., id.* at Ex. C-10.)

9

question of fact as to whether the amount paid to Home Depot was more or less than that paid to Plaintiff. Based on the materials before the Court, under the new program Home Depot charges Defendant 3% of gross sales. (See Di Salvo Ex. D (Dep. of Annette Mullins at p. 113).) Accordingly, even if the letter constitutes a binding agreement, no commissions are due to Plaintiff as the amount paid by Broan to Home Depot exceeds the amount Broan was paying Plaintiff. (*See* Di Salvo Ex. C (Dep. of Bill Palumbo at pp. 21, 75 & 142).) Plaintiff's deposition testimony concedes as much. (*See* Di Salvo Ex. C (Dep. of Bill Palumbo at p. 148).) Accordingly, summary judgment is granted in favor of Defendant on Plaintiff's breach of contract claim to the extent it seeks commissions through December 2004.

*III. Fraud and Misrepresentation*

Defendant moves for summary judgment on the fraud/misrepresentation cause of action on several grounds. First, it argues that the allegations in the complaint fail to pass muster under Rule 9(b) of the Federal Rules of Civil Procedure. Second, it argues that Plaintiff cannot establish a prima facie claim of fraudulent misrepresentation under Wisconsin law.

*A. The Pleading*

Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud be pleaded with particularity. The purposes behind Rule 9(b)'s requirement of specificity are "to provide a defendant with fair notice of plaintiff's claim, . . . to safeguard a defendant's reputation from improvident charges of wrongdoing and . . . to protect against the institution of a strike suit." *Harsco Corp. v. Sequi,* 91 F.3d 337, 347 (2d Cir. 1996) (internal citations and quotations omitted).

Having reviewed the complaint, as supplemented by plaintiff's submissions on the

current motion, the Court finds there is sufficient specificity so as to satisfy the notice purpose of Rule 9(b). Discovery has been completed in this action, and, as set forth below, the Court finds sufficient record evidence to support the claim of fraud. Under these circumstances, no purpose would be served to require formal amendment of the complaint. The Court shall deem the pleading amended to conform to the proof.

*B. The Proof*

The elements of a cause of action for fraud or fraudulent misrepresentation are "(1) a false representation, (2) made with the intent to defraud and for the purpose of inducing another to act upon it, and (3) actually inducing another to rely and act upon that representation, causing injury or damage." *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 318 (1987). Defendant argues that there was never any representation that it would pay Bobrow for the cost of the 2004 reset; that it could not fraudulently induce Plaintiff to perform what it was already obligated to perform under the contract; and Bobrow was not induced to rely upon any alleged misrepresentation made by Broan. (Def. Mem at pp. 9-14.)

There is sufficient record evidence from which a jury could find that Defendant did represent to Plaintiff that it would reimburse Plaintiff for the cost of the 2004 reset. (*See, e.g.,* Di Salvo Aff. Ex. C (Palumbo Dep. at pp. 53 - 55, 67 - 68, 86 - 88, 139 - 140, 148 - 149).) Defendant points to a March 24, 2004 memorandum from Bobrow to Home Depot referring to the upcoming resets and the facts that "as of now all three companies have no intention on paying us" as conclusive evidence that there was never any agreement to pay Plaintiff for the cost of the 2004 reset. (Di Salvo Aff. at Ex. C-7.) As noted above, Plaintiff's deposition testimony and contemporaneous notes could support a finding that representations were made thereafter that

11

Plaintiff would be paid for the cost of the 2004 reset. *(See id.)* Given the confluence of the costs required with the 2004 range hood reset program and the impeding implementation of the ISSI program and the possibility that Plaintiff would not be chosen as a "going-forward" representative, Plaintiff was understandably concerned about the cost of the reset. According to the deposition testimony, Plaintiff sought and received repeated assurances that it would be paid, assurances that were made believable by the repeated requests by Defendant for information concerning Plaintiff's costs. *(See, e.g., id.;* Nevins Aff. at Ex. N - S.)

Defendant's argument that Plaintiff could not be fraudulently induced to perform that which it was already obligated to perform misconstrues Plaintiff's fraud claim. The claim is premised on the alleged representations made by Defendant that it would be reimbursed for its costs of the reset, which representations induced Plaintiff to commence the reset rather than terminate the Agreement as it was privileged to under its terms. Given these assurances, Plaintiff commenced the reset and, when by letter dated May 19, 2004, it was advised that in fact it would not be paid its costs, it was too late to stop the work given that a work stoppage would endanger Plaintiff's relationship with Home Depot. (Di Salvo Aff. Ex. C (Palumbo Dep. at 144).)

In sum, there is sufficient evidence to support the fraud claim and Defendant's motion for summary judgment on that cause of action must be denied.

### IV. *The Counterclaim for Attorney's Fees.*

Defendant also seeks summary judgment on its counterclaim for attorney's fees incurred in defending the claims in this litigation. The motion is denied.

Defendant's counterclaim is premised on paragraph 9.5 of the Agreement entitled "Indemnification." That paragraph provides:

> [Bobrow] agrees to hold harmless and indemnify Broan and assume all liability, including but not limited to all actual attorney fees, actual costs, disbursements, damages, penalties and any other expense associated with actual or threatening litigation, arising directly or indirectly, either from Representative's breach of any obligation imposed or sought to be imposed by or pursuant to this Agreement.

(Nevins Aff. at Ex. C, p. 8.) According to Defendant "[t]his litigation is one in which Bobrow Palumbo is seeking to recover damages as a result of an alleged obligation 'sought to be imposed by or pursuant to' the Agreement. As such, upon the award of summary judgment in favor of Broan, it is expressly entitled to recover from Bobrow Palumbo all fees . . . incurred in connection of its defense of the claims asserted by Bobrow Palumbo in this case." (Def. Mem. at 19.) Given that summary judgment has not been awarded in favor of Broan on all the Plaintiff's claims, summary judgment on the counterclaim is denied.

## *Conclusion*

For the reasons set forth herein, Defendant's motion for summary judgment is GRANTED on the cause of action for unjust enrichment and on the cause of action for breach of contract to the extent that cause of action seeks commissions through December 2004; and is DENIED on the breach of contract claim for the cost of the reset, the fraud claim and the counterclaim.

SO ORDERED.

Dated: Central Islip, New York
     January  4, 2007

/s/
Denis R. Hurley
United States Senior District Judge