UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

BOBROW PALUMBO SALES,
INCORPORATED,

                              Plaintiff,                    CV 04-5334 (ETB)

       against-                                  <u>MEMORANDUM</u>
                                                                <u>OPINION, ORDER</u>

BROAN-NUTONE, LLC,

                              Defendant.

-----------------------------------------------------------------------x

Before the Court is the application of defendant, Broan-Nutone, LLC ("Broan"), for attorney's fees and costs in the amount of $151,992.28. Plaintiff, Bobrow Palumbo Sales, Inc. ("Bobrow Palumbo"), opposes defendant's application, asserting that the requested fee award should be reduced, in an amount determined by the Court, on the grounds that the attorney's fees submitted by defendant are excessive, the billing entries are vague and duplicative, and the costs are unwarranted. For the reasons that follow, defendant is awarded attorney's fees and costs in the amount of $114,905.02.

<u>FACTS</u>

Familiarity with the facts of this action is presumed. Following a bench trial held on June 12 and 13, 2007, by Memorandum Opinion and Order, dated January 4, 2008, I found in favor of defendant, dismissing plaintiff's complaint in its entirety. I further found that, pursuant to the indemnification clause contained in the parties' written Manufacturer's Representative

Agreement, dated February 8, 1999 (the "Agreement"), Broan is entitled to reimbursement of the

attorney's fees and costs it incurred in this action, the amount of which is determined below.


DISCUSSION

I.       The Indemnification Agreement

       Article IX, Section 9.5 of the Agreement between the parties, which is entitled

"Indemnification," states as follows:

> Representative [Bobrow Palumbo] agrees to hold harmless
> and indemnify Broan and assume all liability, including but
> not limited to all actual attorney fees, actual costs, disbursements,
> damages, penalties and any other expense associated with
> actual or threatening litigation, arising directly or indirectly,
> either from Representative's breach of any obligation imposed
> or sought to be imposed by or pursuant to this Agreement.

(Ex. 2, Art. IX, § 9.5.)

       As stated in the Memorandum Opinion and Order of January 4, 2008, the Agreement at

issue in the within action specifies that it is to be governed by Wisconsin law.  (Mem. Opin. &

Order, Boyle J., dated Jan. 4, 2008, 26.)  When applying the terms of a contract, Wisconsin

courts attempt to "ascertain the true intention of the parties," Kraemer Bros., Inc. v. United

States Fire Ins. Co., 278 N.W.2d 857, 860 (Wis. 1979), and interpret the contract according to

the plain meaning of its terms, so long as it is unambiguous.  Id.  Under Wisconsin law, "a

contract is ambiguous when its terms are reasonably or fairly susceptible of more than one

construction." Borchardt v. Wilk, 456 N.W.2d 653, 656 (Wis. Ct. App. 1990) (citing Just v.

Land Reclamation, Ltd., 445 N.W.2d 683, 686 (Wis. Ct. App. 1989)).

       Here, the indemnification provision of the Agreement specifically provides that plaintiff

-2-

reimburse Broan for "all actual attorney fees" as well as all "actual costs [and] disbursements." (Ex. 2, Art. IX, § 9.5.)  Construing the plain meaning of the terms used in the Agreement, it appears that Broan is entitled to the full amount of attorney's fees and costs it incurred during the course of the within litigation - $151,992.28.  Plaintiff, however, challenges such an award on the grounds of reasonableness and requests that the Court reduce the award accordingly.[1]

A review of Wisconsin case law offers little guidance concerning indemnification provisions that specify the reimbursement of actual attorney's fees as opposed to reasonable fees. In HK Systems, Inc. v. Admiral Insurance Company, No. 03-C-0795, 2005 U.S. Dist. LEXIS 39939, at *1, *8, *52 (E.D. Wis. June 24, 2005), the Eastern District of Wisconsin determined whether an insurer, who was obligated to defend its insured and "pay those sums that the insured becomes legally obligated to pay," pursuant to the policy in place between the parties, was required to pay all of the legal fees charged to the insured by its chosen attorney or whether there was instead a "'reasonableness' cap" in place.  Noting that there was no Wisconsin case directly on point, the court relied on a Wisconsin Court of Appeals case in which an insurer breached its duty to defend and the court therein "stated in passing that the insured was 'entitled to actual attorney's fees,' . . . but nevertheless reviewed the attorney's fees for reasonableness."  Id. (citing Patrick v. Head of the Lakes Coop. Elec. Ass'n, 98 Wis. 2d 66, 72-73, 295 N.W.2d 205 (Ct. App. 1980)).  Relying on the Wisconsin Court of Appeals case as well as secondary sources, the court in HK Systems went on to hold that insurers who are obligated to indemnify their insured "should be required to pay only reasonable fees incurred."  HK Sys., 2005 U.S. Dist.

---

[1]  The Court notes that Broan does not dispute plaintiff's assertion that the requested fee award should be based on a reasonableness standard.

LEXIS 39939, at *53.

Although not directly on point, an analogy can be drawn between <u>HK Systems</u> and the within action because both involve indemnification agreements for actual costs incurred. Accordingly, it appears that under Wisconsin law, although the indemnification agreement provides for the recovery of actual attorney's fees, such fees are also reviewed by the Court for reasonableness.[2]

Moreover, under New York law, where "a contract provides for shifting of the *actual* attorney['s] fees expended by the prevailing party, 'the court will order the losing party to pay whatever amounts have been expended . . . so long as those amounts are not unreasonable.'" <u>Wells Fargo Bank N.W., N.A. v. Taca Int'l Airlines, S.A.</u>, 315 F. Supp. 2d 347, 353 (S.D.N.Y. 2003) (quoting <u>F.H. Krear & Co. v. Nineteen Named Trustees</u>, 810 F.2d 1250, 1263 (2d Cir. 1987)). This rule applies to contracts for indemnification as well. <u>See, e.g.</u>, <u>Rostolder v. Life Energy & Tech. Holdings, Inc.</u>, No. 03-CV-3375, 2006 U.S. Dist. LEXIS 67649, at *6-7 (E.D.N.Y. Sept. 20, 2006) ("Nevertheless, a court should award only the amount of attorneys' fees that are reasonable, even where an agreement provides for indemnification.") (citing cases); <u>Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co.</u>, No. 00-CIV-5963, 2006 U.S. Dist. LEXIS 36330, at *7 (S.D.N.Y. June 5, 2006) ("Although the Indemnity Agreement clearly states that the Indemnitors are liable for [all] 'attorneys fees and other expenses' those fees must be reasonable

---

[2] As stated in the prior Memorandum Opinion and Order of January 4, 2008, an unpublished opinion may be not be cited for precedential value, pursuant to Wisconsin Rule of Appellate Procedure 809.23. (Mem. Opin. & Order, Boyle J., dated Jan. 4, 2008, 38-39.) Ironically, <u>Lyman Lumber of Wisconsin, Inc. v. Yourchuck Video, Inc.</u>, No. 04-0279, 2005 WI App 88, at *1, 695 N.W.2d 903 (Wis. Ct. App. 2005) (unpublished), is the only Wisconsin decision the Court was able to find that construes the term "actual attorney's fees." It is not relied on in reaching this decision.

in nature."); <u>Clarendon Nat'l Ins. Co. v. GWTA Ins. Servs., Inc.</u>, No. 00 Civ. 5620, 2002 U.S. Dist. LEXIS 18817, at *16-17 (S.D.N.Y. Aug. 1, 2002) (finding that where the parties' agreement provided for indemnification of "all . . . costs or expenses, including without limitation, attorneys' fees," the court "must order the losing party to pay the amounts actually incurred by the prevailing party, 'so long as those amounts are not unreasonable.'") (quoting <u>F.H. Krear & Co.</u>, 810 F.2d at 1263)); <u>Am. Motorists Ins. Co. v. United Furnace Co., Inc.</u>, No. 88 Civ. 1238, 1990 U.S. Dist. LEXIS 768, at *3, *5 (S.D.N.Y. Jan. 29, 1990) (addressing the reasonableness of the attorney's fees sought where indemnity agreement provided for the indemnification of "any and all liability . . . expense, cost and attorneys' fees" and stating that "[t]he Court cannot simply accept [a party's] fee application without review"). The rationale behind this rule is that "[b]ecause a fee-shifting clause can produce perverse incentives for a litigant . . . courts must scrutinize fee requests to ascertain whether they are reasonable." <u>Diamond D. Enters. USA, Inc. v. Steinsvaag</u>, 979 F.2d 14, 19 (2d Cir. 1992) (citations omitted); <u>see</u> <u>also</u> <u>Kleinberg v. Radian Group, Inc.</u>, No. 01 Civ. 9295, 2003 U.S. Dist. LEXIS 18902, at *10-11 (S.D.N.Y. Oct. 24, 2003) (stating that "a provision for attorney's fees that requires a victorious party to pay the attorney's fees of the losing party" must be "strictly construed" because "such an arrangement creates an incentive to engage in litigation that might not have otherwise been brought - or that might have been conducted differently - had the losing party been forced to bear the risk of paying its own fees").

When determining the amount of reasonable attorney's fees to be awarded, Wisconsin courts, like the Second Circuit, employ the "lodestar method." <u>See</u> <u>Anderson v. MSI Preferred Ins. Co.</u>, 697 N.W.2d 73, 85 (Wis. 2005) (stating that the Wisconsin Supreme Court has

"adopted the lodestar approach for determining reasonable attorney fees") (citation omitted);

Kolupar v. Wilde Pontiac Cadillac, Inc., 683 N.W.2d 58, 67 (Wis. 2004) (adopting the "lodestar

methodology" set forth in Hensley v. Eckerhart, 461 U.S. 424 (1983) and "direct[ing] the circuit

courts [of Wisconsin] to follow its logic when explaining how a fee award has been

determined"). Under Wisconsin law, "the burden of proof is upon the attorney submitting the

fees to prove the reasonableness of a fee when it is questioned." Standard Theatres, Inc. v. DOT,

349 N.W.2d 661, 671 (Wis. 1984) (citation omitted).


II.     The Lodestar Method

"The most useful starting point for determining the amount of a reasonable fee is the

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). This calculation is commonly referred to as the

"lodestar" figure,[3] see, e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,

478 U.S. 546, 563 (1986); LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998), and

"provides an objective basis on which to make an initial estimate of the value of a lawyer's

services." Hensley, 461 U.S. at 435. The burden is on the party seeking attorney's fees to

submit sufficient evidence to support the hours worked and the rates claimed. See id. at 433;

---

[3] In a recent opinion, the Second Circuit declared that it was abandoning the use of the
term "lodestar" because its meaning "has shifted over time, and its value as a metaphor has
deteriorated to the point of unhelpfulness." Arbor Hill Concerned Citizens Neighborhood Ass'n
v. County of Albany, 484 F.3d 162, 169 (2d Cir. 2007). The Circuit coined the term
"presumptively reasonable fee" to be used in its place. Id. However, the court specifically
stated that it did "not purport to require future panels of [the Second Circuit] to abandon the
term" because "it is too well entrenched." Id. n.2. Accordingly, it appears that either term is
acceptable.

<u>Cho v. Koam Med. Servs. P.C.</u>, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) ("The party seeking the award bears 'the burden of documenting the hours reasonably spent by counsel . . . .'") (quoting <u>King v. STL Consulting, LLC</u>, No. 05 CV 2719, 2006 WL 3335115, at *6 (E.D.N.Y. Oct. 3, 2006)) (additional citation omitted). Accordingly, the party seeking an award of attorney's fees must support its application by providing contemporaneous time records that detail "for each attorney [and legal assistant], the date, the hours expended, and the nature of the work done." <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983). If the documentation is inadequate, the court may reduce the award accordingly. <u>See</u> <u>Hensley</u>, 461 U.S. at 433-34; <u>Molefi v. The Oppenheimer Trust</u>, No. 03 CV 5631, 2007 U.S. Dist. LEXIS 10554, at *16 (E.D.N.Y. Feb. 15, 2007) ("'If such records are inadequate the Court may reduce the award accordingly.'") (quoting <u>Vernon v. Port Auth. of N.Y. and N.J.</u>, 220 F. Supp. 2d 223, 229 (S.D.N.Y. 2002)).

Once the initial lodestar is computed, the district court may consider other factors "that may lead [it] to adjust the fee upward or downward," <u>Hensley</u>, 461 U.S. at 434, including the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Id.</u> at 430 n.3 (citing <u>Johnson v. Georgia Hwy. Express</u>, 488 F.2d 714, 717-19 (5th Cir. 1974)). Although the lodestar may be adjusted upward or downward, "there is '[a] strong presumption

that the lodestar figure . . . represents a reasonable fee.'" United States Football League v. Nat'l Football League, 887 F.2d 408, 413 (2d Cir. 1989) (quoting Delaware Valley Citizens' Council for Clean Air, 478 U.S. at 565) (alteration in original).

A.     Calculating the Reasonable Hourly Rate

In determining what constitutes a "reasonable hourly rate," the court should look to the market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"[4] Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stevenson, 465 U.S. 886, 896 n.11 (1984)). The court "may also rely on its own knowledge of hourly rates charged in private firms to determine what is reasonable in the relevant community." Nike, Inc. v. Top Brand Co., No. 00 Civ. 8179, 2006 U.S. Dist. LEXIS 8381, at *4-5 (S.D.N.Y. Feb. 24, 2006) (citing Miele v. N.Y. State Teamsters Conf. Pens. & Retirement Fund, 831 F.2d 407, 409 (2d Cir. 1987)). In addition, the size and caliber of a firm may also be considered when determining a reasonable hourly rate, "primarily due to varying overhead costs." Cioffi v. New York Cmty. Bank, 465 F. Supp. 2d 202, 219 (E.D.N.Y. 2006) (citing Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989) (stating that "smaller firms may be subject to their own prevailing market rate") (additional citations omitted); see also Lukaszuk v. Sudeen, No. CV 02-5143, 2007 U.S. Dist. LEXIS 95919, at *35 (E.D.N.Y. Nov. 27, 2007) ("[C]ourts typically recognize that the size and caliber of a firm will influence the determination of appropriate billing rates.") (citing cases).

For purposes of determining the reasonable hourly rate, "[t]he relevant community to

_____

[4] The Second Circuit recently defined the reasonable hourly rate as "the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens, 484 F.3d at 169.

-8-

which the court should look is the district in which the case was brought." Marisol A. v. Guiliani, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citing In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir. 1987); see also Arbor Hill Concerned Citizens, 484 F.3d at 169 (stating that the "community" for purposes of calculating attorney's fees "is the district where the district court sits") (citation omitted).  Courts in this circuit routinely consider the rates of both the Eastern District of New York as well as the Southern District when undertaking this analysis.  See, e.g., New Leadership Committee v. Davidson, 23 F. Supp. 2d 301, 305 (E.D.N.Y. 1998) (holding that the magistrate judge did not abuse her discretion in considering the prevailing hourly rates in the Southern District of New York when awarding attorney's fees).

The determination of what constitutes a reasonable hourly rate also "requires the submission of information 'concerning the credentials or experience of counsel applying for fees.'"  Molefi, 2007 U.S. Dist. LEXIS 10554, at *16 (quoting Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03 Civ. 1382, 2003 U.S. Dist. LEXIS 23179, at *4 (S.D.N.Y. Dec. 23, 2003)). Where such information is lacking, the court may reduce the award of attorney's fees accordingly.  See Molefi, 2007 U.S. Dist. LEXIS 10554, at *16 (citation omitted); see also Marano v. Aaboe, No. 05 Civ. 9375, 2007 U.S. Dist. LEXIS 80154, at *9 (S.D.N.Y. Oct. 29, 2007) (reducing plaintiff's counsel's requested hourly rate where counsel failed to "provide any details as to her skill, experience or reputation" in order to support the rate requested) (citing Gierlinger, 160 F.3d at 882) (additional citation omitted).

"Overall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants."  Cho, 524 F. Supp. 2d at 207

(collecting cases); <u>Commission Express Nat'l, Inc. v. Rikhy</u>, No. CV-03-4050, 2006 U.S. Dist. LEXIS 8716, at 19-20 (E.D.N.Y. Feb. 16, 2006) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners; $100 to $150 for junior associates . . . $200 to $250 for senior associates . . .[and] [r]ates for paralegals range from $60 to $75.") (citing cases). Similarly, in the Southern District of New York, the following rate scale has been found to be reasonable: $350 for attorneys with more than fifteen years of experience, $300 for attorneys with ten to fifteen years of experience, $230-$250 for attorneys with seven to nine years of experience, $180-$200 for attorneys with four to six years of experience, and $130-$150 for attorneys with one to three years of experience. <u>See</u> <u>Marisol A.</u>, 111 F. Supp. 2d at 386-387 (citing cases where the fee awards ranged from $125-$200 for junior and senior associates and from $250-$350 for partners).

Here, defendant's counsel's affidavit states that there were four "main timekeepers" who expended time in the within action: (1) Patrick Perrone, a partner, whose billing rate is $375 per hour; (2) Joesph DiSalvo, also a partner, whose billing rate is $295 per hour; (3) Nolan Shanahan, an associate, whose billing rate is $265 per hour; and (4) Loly G. Tor, also an associate, whose billing rate is $225 per hour. (Certification of Patrick J. Perrone, dated Jan. 31, 2008 ("Perrone Certification"), ¶ 7.) Counsel, however, has failed to provide the Court with "information of equal importance; namely, the background and experience of counsel for whom fees are sought." <u>Molefi</u>, 2007 U.S. Dist. LEXIS 10554, at *18. Counsel has similarly failed to provide the Court with "any guidance as to what rates attorneys of similar caliber charge in the current marketplace." <u>Id.</u> Accordingly, there is "no way the [C]ourt can engage in any sort of comparative analysis as mandated under the 'lodestar' method . . . [and] a deduction is

warranted." Id. (citing cases in which reductions were made in the amount of attorney's fees requested due to counsel's failure to provide information concerning the credentials of attorneys for whom fees were requested).

In addition, as stated above, defendant's counsel's affidavit states that there were four "main timekeepers" who performed legal work on behalf of defendant. A review of the time records submitted in support of defendant's application for attorney's fees, however, indicates that, including the individuals named in defendant's counsel's affidavit, there were actually four partners, eight associates and five legal assistants, or paralegals, who expended time in connection with the within action. As with the four "main timekeepers," no information concerning these additional individuals' credentials has been submitted to the Court. Nor have hourly billing rates for these additional individuals been provided. Moreover, the Court is unable to glean what the hourly billing rates are for these additional individuals from the time records submitted.

Accordingly, the Court will apply the following hourly billing rates in calculating the lodestar: (1) $275 per hour for partners; $175 per hour for all associates;[5] and $75 per hour for legal assistants.

B.    Number of Hours Reasonably Expended

In determining the hours reasonably expended, federal courts consider the following:

_____

[5] Since counsel for defendant has failed to provide the Court with any information concerning the seniority level of the associates who worked on the within action, and such information cannot be ascertained from the time records either, the Court will apply the same hourly billing rate for all associates irrespective of whether they are junior or senior associates.

> (1) hours which reflect the inefficiency or duplication of services
> should be discounted; (2) hours that are excessive, unnecessary or
> which reflect "padding" should be disallowed; (3) legal work
> should be differentiated from nonlegal work such as investigation,
> clerical work, the compilation of facts and other types of work that
> can be accomplished by nonlawyers who command lesser rates;
> (4) time spent in court should be differentiated from time expended
> for out-of-court services; and (5) the hours claimed should be
> weighed against the court's own knowledge, experience and expertise
> as to the time required to complete similar activities.

McGrath v. Toys "R" Us, Inc., No. 01-3071, 2002 U.S. Dist. LEXIS 22610, at *8-9 (E.D.N.Y.

Oct. 16, 2002). "The relevant issue . . . is not whether hindsight vindicates an attorney's time

expenditures, but whether, at the time the work was performed, a reasonable attorney would have

engaged in similar time expenditures." Grant v. Bethlehem Steel Corp., 973 F.2d 96, 99 (2d Cir.

1992) (citation omitted). The court should, however, deduct any hours for work that was

"excessive, redundant or otherwise unnecessary." Hensley, 461 U.S. at 434. Any deductions for

this reason may be accounted for in an across-the-board percentage. See Luciano v. Olsten

Corp., 109 F.3d 111, 117 (2d Cir. 1997) (citing In re Agent Orange, 818 F.2d at 237-38).

Where billing records are vague, a reduction in fees is also appropriate. See Ace Ltd. v.

Cigna Corp., No. 00-9423, 2001 WL 1286247, at *4 (S.D.N.Y. Oct. 22, 2001); Marisol A., 111

F. Supp. 2d at 397; Williams v. N.Y.C. Housing Auth., 975 F. Supp. 317, 327 (S.D.N.Y. 1997).

"Although counsel is not 'required to record in great detail how each minute of his time was

expended . . . counsel should [at a minimum] identify the general subject matter of his time

expenditures." Marisol A., 111 F. Supp. 2d at 396-97 (quoting Hensley, 461 U.S. at 437 n.12).

Entries that have been found to be inadequate with regard to specificity include those that state

"search for reply brief," "conference with," or "review of," without further explanation. Ragin

v. Harry Macklowe Real Estate Co., 870 F. Supp. 510, 520 (S.D.N.Y. 1994); see also Orshan v.

Macchiarola, 629 F. Supp. 1014, 1019 (E.D.N.Y. 1989) (finding that entries such as "prepare correspondence" and "review correspondence" are inadequate).

A reduction is also warranted where counsel engages in "block billing," such that multiple tasks are aggregated into one billing entry thereby "'imped[ing] the court's efforts to evaluate the reasonableness of any of the listed activities.'" Commission Express Nat'l, 2006 U.S. Dist. LEXIS 8716, at *17 (quoting Soler v. G&U Inc., 801 F. Supp. 1056, 1061-62 (S.D.N.Y. 1992). Although not prohibited, block billing "renders it difficult to determine whether, and/or the extent to which, the work done by . . . attorneys is duplicative or unnecessary . . . ." Molefi, 2007 U.S. Dist. LEXIS 10554, at *21 (quotation omitted). Across-the-board percentage cuts are routinely employed by courts to remedy such block billing. See, e.g., id. at *24 (reducing fees by fifteen percent, in part for block billing); Commission Express Nat'l, 2006 U.S. Dist. LEXIS 8716, at *17 (reducing fees by ten percent for block billing); Gonzalez v. Bratton, 147 F. Supp. 2d 180, 213 (S.D.N.Y. 2001) (reducing fees by twelve percent for block billing).

In the within action, defendant's counsel seeks reimbursement for 513.5 hours of time expended on behalf of defendant.[6] However, a review of the billing records submitted by defendant's counsel reveals a substantial amount of block billing as well as numerous vague entries that fail to specify the nature of the work performed by either the attorney or the legal assistant. With respect to block billing, although it appears to have been a regular practice

_____

[6] It should be noted that the number of hours sought to be reimbursed is not included in the Certification of Patrick J. Perrone, submitted in support of defendant's request for attorney's fees. The Court has reviewed each of the thirty-two invoices that were rendered to defendant, dating from February 16, 2005 to December 17, 2007 - and provided to the Court in connection with the within application - and added up the total number of hours billed from each invoice.

engaged in by almost all of defendant's attorneys and legal assistants, the most egregious offenders appear to be (1) Joseph DiSalvo, a partner, who block billed on at least nine occasions while working on the within action; (2) Nolan Shanahan, an associate, who block billed on at least twenty-eight instances while billing in this action; and (3) Loly Garcia Tor, also an associate, who engaged in block billing on at least twenty-four occasions while working on behalf of defendant.[7] As stated above, such billing practices makes it virtually impossible for the Court to identify whether the amount of time spent on a particular task is reasonable and a reduction in the fees requested is warranted when such a practice is engaged in by counsel, and particularly here, where it appears to be the common practice of the firm.

Moreover, the lack of specificity with respect to numerous time entries also warrants a deduction in the fees requested. Such entries include items that merely state "conferring with

---

[7] A good example of the of block billing involved here is Nolan Shanahan's time entry for October 17, 2005, which includes eleven tasks aggregated into one time entry, for a total of 4.3 hours, as follows:

> Telephone conversation with Stephen Jacobs re status of case. Reviewing local court rules in connection with same. Reviewing contents of file in connection with same. Telephone conversation with plaintiff's counsel re outstanding discovery. Conference call with Stephen Jacobs and Joseph DiSalvo re manner in which to proceed. Drafting and revising correspondence to plaintiff's counsel re outstanding discovery. Attention to service of same. Drafting and revising initial disclosure. E-mail correspondence with Stephen Jacobs re same. Reviewing contents of file in connection with collection of exhibits to same. Drafting correspondence to plaintiff's counsel re service of same. Attention to service of same.

(Perrone Certification, Ex. B, Invoice 7387969, at 2.)

plaintiff's attorney," "reviewing status report," "conferring with court," "reviewing pretrial issues," "preparing for trial," and other similar phrases. Entries of this nature fail to meet the requisite specificity mandated by the courts of this Circuit. See Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172 (2d Cir. 1998) (holding that attorney's fees should be "documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done").

III.    Calculation of Attorney's Fees

When calculating an across-the-board percentage reduction in fees, courts consider all of the various relevant factors outlined above. See, e.g., Marisol, 111 F. Supp. 2d at 401 (reducing hours by 15% for time spent on non-compensable matters, overstaffing and excessive time spent on discrete tasks); see also Ragin, 870 F. Supp. at 521 (employing a 30% across-the-board percentage reduction for numerous vague billing entries, lack of contemporaneous time records and duplicative billing). Based on the aforementioned factors, all of which have been discussed supra, the Court finds an across-the-board reduction of ten percent (10%) for all of the hours requested to be appropriate.

In light of the ten percent (10%) reduction in hours, the plaintiff is directed to reimburse defendant for its attorney's fees incurred in connection with the instant action as follows:

| Name | Position | Requested Number of Hours Reduced by 10% | Court's Recommended Hourly Rate | Number of Hours Reasonably Expended Multiplied by Reasonable Hourly Rate |
|---|---|---|---|---|
| Patrick J. Perrone | Partner | 109.15 x 90% = 98.24 | $275/hour | $ 27,016.00 |
| Joseph R. DiSalvo | Partner | 108.3 x 90% = 97.47 | $275/hour | $ 26,804.25 |
| Thomas M. Smith | Partner | 1.1 x 90% = .99 | $275/hour | $ 272.25 |
| Robert S. Bernstein | Partner | 2.9 x 90% = 2.61 | $275/hour | $ 717.75 |
| Nolan Shanahan | Associate | 56.9 x 90% = 51.21 | $175/hour | $ 8,961.75 |
| Loly G. Tor | Associate | 172 x 90% = 154.8 | $175/hour | $ 27,090.00 |
| Lori J. Shyavitz | Associate | 6.2 x 90% = 5.58 | $175/hour | $ 976.50 |
| Grace S. Kurdian | Associate | 24.2 x 90% = 21.78 | $175/hour | $ 3,811.50 |
| Matthew H. Sontz | Associate | 1 x 90% = 0.90 | $175/hour | $ 157.50 |
| Cynthia S. Betz | Associate | 2.6 x 90% = 2.34 | $175/hour | $ 409.50 |
| Natalie S. Watson | Associate | 0.3 x 90% = .27 | $175/hour | $ 47.25 |
| Christian Harvat | Associate | 9.5 x 90% = 8.55 | $175/hour | $ 1,496.25 |
| Lisa M. Caroselli | Legal Assistant | 2.35 x 90% = 2.12 | $75/hour | $ 159.00 |
| Michael Palitz | Legal Assistant | 7.9 x 90% = 7.11 | $75/hour | $ 533.25 |

| Name | Position | Requested Number of Hours Reduced by 10% | Court's Recommended Hourly Rate | Number of Hours Reasonably Expended Multiplied by Reasonable Hourly Rate |
|------|----------|------------------------------------------|--------------------------------|------------------------------------------------------------------------|
| Melissa Ruggirello | Legal Assistant | 3.9 x 90% = 3.51 | $75/hour | $ 263.25 |
| Bryan Widro | Legal Assistant | 4.7 x 90% = 4.23 | $75/hour | $ 317.25 |
| Peggy Chateauneuf | Legal Assistant | 0.5 x 90% = 0.45 | $75/hour | $ 33.75 |

Based on the foregoing, the Court finds that defendant is entitled to an award of $99,067.00 in reasonable attorney's fees.

IV.     Costs and Disbursements

"'Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (quoting United States Football League, 887 F.2d at 416); see also Miltland Raleigh-Durham v. Meyers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.") (quoting Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987)) (additional citation omitted).  "However, expenses which are part of the attorney's ordinary overhead are not to be reimbursed."  SEC v. Goren, 272 F. Supp. 2d 202, 214 (E.D.N.Y. 2003) (citing New York State Nat'l Org. for Women v. Terry, 737 F. Supp. 1350, 1363 (S.D.N.Y.

1990). The expenses claimed in this action are $15,928.03.[8]

Although defendant's counsel did not submit an itemized list of expenses, with descriptions as to why each expense was incurred, the invoices submitted in support of defendant's application detail the expenses that were charged to defendant in connection with the within action. Such expenses include the following: (1) photocopies; (2) telephone calls; (3) postage, including Federal Express and United Parcel Service expenses; (4) travel expenses, including mileage, lodging, transportation and meals; (5) court-related fees; (6) facsimiles; (7) "library research," including online legal research as well as PACER-related research; (8) "supplies;" (9) court reporter fees and transcripts; (10) messenger services; (11) process server fees; and (12) outside vendor services.

As an initial matter, expenditures for photocopies, telephone calls, postage, court fees, facsimiles, transcripts, messenger services, process servers and outside vendor services are routinely recoverable. See, e.g., Simmons v. N.Y. City Transit Auth., No. CV-02-1575, 2008 U.S. Dist. LEXIS 16949, at *22-23 (E.D.N.Y. Mar. 4, 2008) (finding costs relating to "filing fees, process servers, postage, travel and photocopying" to be reasonable expenditures for which plaintiff was entitled to reimbursement); Cho, 524 F. Supp. 2d at 212 (reimbursing plaintiff for costs related to "Federal Express, reproduction, telephone, facsimile, postage, deposition services, [and] deposition/hearing transcripts"); Molefi, 2007 U.S. Dist. LEXIS 10554, at *25 (finding that "costs associated with mailings, photocopies, and court fees . . . are precisely the

---

[8] The Court notes that this figure does not include the disbursements listed on the invoice dated September 7, 2007 in the amount of $726.51. No explanation is provided by counsel for defendant as to why these costs are not being sought. Accordingly, since defendant has not included these expenses in its application, they will be disregarded.

type of costs that may be included in an award of attorney's fees"); <u>Shannon v. Fireman's Fund Ins. Co.</u>, 156 F. Supp. 2d 279, 305 (S.D.N.Y. 2001) (reimbursing plaintiff for costs relating to "photocopying, filing fees, Federal Express, [and] trial exhibits"). Accordingly, defendant is awarded reimbursement in full for its expenses related to photocopies, telephone calls, postage, court fees, facsimiles, transcripts, messenger services, process servers and outside vendor services.

Plaintiff opposes defendant's request for reimbursement for those expenses related to online legal research, supplies and travel. For the reasons discussed below, defendant's application for costs related to legal research and its counsel's travel are granted. Defendant's request for reimbursement of its supply-related expenses is, however, denied.

A.    Electronic Research

In 1996, the Second Circuit explicitly stated that "computer research is merely a substitute for an attorney's time that is compensable under an application for attorney's fees and is not a separately taxable cost." <u>U.S. v. Merritt Meridian Constr. Corp.</u>, 95 F.3d 153, 173 (2d Cir. 1996). Many courts have adhered to this mandate. <u>See, e.g.</u>, <u>Fink v. City of N.Y.</u>, 154 F. Supp. 2d 403, 415 (E.D.N.Y. 2001) (denying recovery for Westlaw costs); <u>Scanlon v. Kessler</u>, 23 F. Supp. 2d 413, 418 (S.D.N.Y. 1998) (finding plaintiff's expenses for LEXIS research "duplicative and hence, not recoverable").

However, in 2004, the Circuit recognized that the costs of electronic legal research are compensable, and therefore may be awarded in connection with an application for attorney's fees, but only where the charges are not already accounted for in the attorney's hourly rate. <u>See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 369 F.3d 91, 97-98

(2d Cir. 2004) ("We agree that the use of online research services likely reduces the number of hours required for an attorney's manual research, thereby lowering the lodestar, and that in the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award.  If [the firm] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award.").  Many courts have since compensated parties for those expenses incurred in connection with online legal research.  <u>See, e.g.</u>, <u>Cho</u>, 524 F. Supp. 2d at 212 (awarding costs related to electronic research but reducing the amount by $5,000 on the grounds of excessiveness); <u>Int'l Consulting Servs., Ltd. v. Cheap Tickets, Inc.</u>, No. 01-CV-4768, 2007 U.S. Dist. LEXIS 71689, at *26 (E.D.N.Y. Sept. 12, 2007) (finding costs related to electronic research reasonable and awarding costs requested).

In the instant action, although defendant's counsel offers no explanation as to whether the expenses incurred in connection with Westlaw or LEXIS or any PACER-related research are accounted for in counsel's hourly rates, it is clear from the invoices submitted in support of defendant's request that such costs were charged to defendant in the within action.  Accordingly, defendant's application for costs related to computerized legal research is granted.

B.      <u>Travel-Related Expenses</u>

Plaintiff argues that it "should not be responsible for reimbursing Defendant for its Counsel's lodging, meals and travel costs, during the course of this litigation . . . merely because [defendant's counsel] had to travel from New York City and New Jersey to Long Island for Court appearances, one deposition and trial."  (Pl. Mem. of Law in Opp'n to Def. Application for Reimbursement of Attorney's Fees and Costs, 10.)  However, plaintiff offers no case law to support such an assertion.  Rather, expenses relating to travel, including transportation and

meals, are routinely recoverable. See, e.g., Simmons, 2008 U.S. Dist. LEXIS 16949, at *22 (noting that "[c]osts relating to . . . travel . . . are routinely made"); In re Merrill Lynch & Co. Research Reports Secs. Litig., No. 02 MDL 1484, 2007 U.S. Dist. LEXIS 9450, at *79 (S.D.N.Y. Jan. 31, 2007) (finding expenses for transportation and meals to be reasonable and recoverable); Levy v. Powell, No. CV-00-4499, 2005 U.S. Dist. LEXIS 42180, at *33 (E.D.N.Y. July 7, 2005) (stating that travel fees are recoverable). Moreover, "'[i]t is also reasonable that counsel be reimbursed for mileage and parking costs' . . . ." Teamsters Local 814 Welfare Fund, No. CV-07-2005, 2008 U.S. Dist. LEXIS 14717, at *19-20 (E.D.N.Y. Feb. 27, 2008) (quoting Rand-Whitney Containerboard Ltd. P'ship v. Town of Montville, No. 96-CV-413, 2006 U.S. Dist. LEXIS 75870, at *27 (D. Conn. Sept. 5, 2006)). Accordingly, defendant is entitled to reimbursement for its counsel's travel-related expenses.

C.      Supplies

As stated above, however, recovery is not permitted for those expenditures associated with "'routine office overhead.'" Molefi, 2007 U.S. Dist. LEXIS 10554, at *25 (quoting Pinner v. Budget Mortgage Bankers, Ltd., 336 F. Supp. 2d 217, 222 (E.D.N.Y. 2004)). Rather, such costs must be "'absorbed within the attorney's hourly rate.'" Fink, 154 F. Supp. 2d at 415 (quoting Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2d Cir. 1987)). Here, defendant seeks reimbursement for the following: (1) $8.38 in "supplies" associated with the deposition of "S. Jacobs;" (2) $17.50 for velobinding; and (3) $64.13 for "tabs to be placed in binder for preparation of trial." Such expenses are simply not recoverable and are therefore denied. See, e.g., Close-Up Int'l, Inc. v. Berov, No. 02-CV-2363, 2007 U.S. Dist. LEXIS 83972, at *33 (E.D.N.Y. Dec. 13, 2007) (finding that expenses for trial exhibit binders and tabs "are not

properly reimbursable, because they are considered to be part of a law firm's overhead that is already paid for in the attorney's fees") (citations omitted); <u>Lavely v. Redheads, Inc.</u>, No. 03 Civ. 7752, 2007 U.S. Dist. LEXIS 77109, at *24-25 (S.D.N.Y. Oct. 12, 2007) (recommending that the court deny recovery for velobinding); <u>Vernon</u>, 220 F. Supp. 2d at 232 (denying recovery for binder tabs on the ground that such expenses "fall under either the category of overhead costs or supplies, neither of which is compensable") (citations omitted); <u>Barrett v. United States</u>, Nos. 76 Civ. 381, 76 Civ. 1061, 1991 U.S. Dist. LEXIS 4626, at *21 (S.D.N.Y. Apr. 9, 1991) (finding that velobinding is considered an "overhead expense" and disallowing recovery for it).

Based on the foregoing, and taking into account the deductions for supplies ($90.01), defendant is awarded costs in the amount of $15,838.02

### CONCLUSION

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that, as per the Memorandum Opinion and Order dated January 4, 2008, plaintiff's complaint asserting claims for breach of contract and fraud and misrepresentation is dismissed.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that defendant's counterclaim for indemnification is granted and defendant is awarded attorney's fees in the amount of $99,067.00 and costs in the amount of $15,838.02, for a total monetary award of $114,905.02.

The Clerk of the Court is directed to enter judgment accordingly and to mark this case closed.

**SO ORDERED:**

Dated: Central Islip, New York
        April 30, 2008


                                        /s/ E. Thomas Boyle
                                        E. THOMAS BOYLE
                                        United States Magistrate Judge